Pleasure to see you all. Thank you. We will hear argument now in the case of C.B. against Blue Cross and Blue Shield. Mr. King. Good morning, Your Honors. May it please the Court. Brian King on behalf of the plaintiffs, the appellants. This case involves a relatively narrow... I have a question. Yes. Who are the plaintiffs? Plaintiffs are mother and daughter who are... No, no, no. You're not getting my question. The lead plaintiff, C.B., has litigated using her initials... Yes. ...which does not appear to be authorized by the rules. Rules authorize minors to litigate in terms of initials, but not adults. C.B. appears to be an adult. That's correct, Your Honor, and so is Arby at this point, her son. Oh, well, then we should have both names on the record. There is a process. I'm not sure that we've been doing that, going through the process more rigorously. Both parties, after oral argument, will submit statements about the parties' real names, and we will substitute the real names for the initials. Happy to do that, Your Honor. I'm a little surprised that you've used initials throughout, in light of the fact that the principal case you're arguing about, the caption is Midtwin-Henson against Group Health. It was litigated in the real name of the adult. Yes. And as should this case. Happy to go through that process, Your Honor. The issue that the court is faced with is the question that the district court expressed some frustration about, and I think, quite honestly, is seeking guidance from the Seventh Circuit on. The Tenth Circuit and the Ninth Circuit have outlined, at the circuit levels, precedential decisions that identify for parties, litigants, what the elements of cause of action are for a Mental Health Parity and Addiction Equity Act claim. If you had to summarize, just briefly, with the Parity Act, looking at the amended complaint as well as the briefing here, are your clients alleging, which is not clear, a facial as applied? What type of challenge? Just so I can understand, what type of challenge are they raising? Thank you, Your Honor. I appreciate the question. It's not a facial challenge. It's a challenge based on the application of facial language that we acknowledge is applied even-handedly by Blue Cross to both skilled nursing facilities and residential treatment centers. The impact, as applied and in operation language, those phrases appear in the relevant federal regulations. There's some ambiguity about what those mean. Some courts have said you have to take into account, at least to some degree, the impact on whether a particular facial treatment limitation has the effect or the impact of making a more limited availability of coverage for mental health and substance use disorders as compared to a comparable level of medical and surgical treatment. Other cases say no, and this is the district court in this case said, as long as you have a facial neutrality that is objectively and partially applied in a way that is even-handed across the board, there can be no violation of MHPAEA. Why don't we call it the Act? We can call it the Act. The departments have an acronym, the pronunciation, but I'm happy to call it the Act, Your Honor. So that's the issue. I think this is an opportunity for the Seventh Circuit to, as the Ninth and Tenth have done, establish a precedent for what it takes to plead effectively a case under the Mental Health Parity Act and to specifically address this question that you've been asking about, Judge Pryor, which is can you have compliance with the Act if you have a facial, neutral language that you apply dispassionately and objectively across the board, or... What does that have to do with pleading? Well, I think it has to do with the pleading in the sense that... Because the parties agree on the facts. Well, that's true, Your Honor, in the sense that... I ask this question for a deeper reason. Your brief assumes, and I think the Blue Cross brief may assume, that what complaints have to contain is facts matching elements of a claim. There's a word for that. It's called code pleading. The 1938 changes to the federal rules expressly rejected code pleading. The Supreme Court has held that code pleading is not necessary, that you plead claims, not elements, not facts. We're not going to go back to code pleading today. That's just... Well, neither the rules nor the Supreme Court permit that. Some state courts require it, but federal courts do not. So why don't we just get to how the Act applies in a situation like this? And I think for purposes of 12b, Your Honor, the question is did the defendants have fair notice of the nature of the claim, the cause of action that was being alleged by the claimant? And we have... The phrase cause of action was abolished in 1938, too. There is a claim for relief. Lawyers keep saying cause of action, cause of action, but it's gone. We're closing in on 100 years now. Well, the claim that we are asserting is something that Blue Cross understood very well, the question is to what extent does this court have the ability and do courts across the country have the ability to take into account in evaluating whether the Act has been violated the disparate impact, the disparate effect on individuals in terms of their access to coverage for mental health and substance use disorders? We submit that the language of the regulations and certainly the language of the CAA, the Consolidated Appropriations Act, that amended the Act in 2021 makes clear that you do have to take those effects, those disparate impacts, into account. Now, the preamble of... What is the termination limitation? The treatment limitation here, Your Honor, is that a facility, the residential treatment center, has to have a 24-7 on-site nurse all the time. We allege that's far beyond the scope of what is required under generally accepted standards of care. It may be within the standards of care for a skilled nursing facility, but it's not for a residential treatment center. And the court itself said, even if you're right, plaintiffs, I can't find that there is a claim that you adequately plead under Rule 12 and I have to throw you out. That's what we're asking this court to address. So I'll reserve... Are you agreeing that it is in the plan? Yes, it's in the... The 24-7 on-site nursing requirement is in the plan, Your Honor. I don't think there's any question there.  So you're arguing now for what you call disparate impact. What is the language and the statute on which you rely? The language on the statute we cite is in the most recent version, Your Honor, by the most recent version. The Act was amended in 2021 under the CAA. There's reference in 29... Would you please cut out these weird acronyms and initialisms? Yeah. I thought I've clued you into that already, but apparently not. Well, Congress passed the Consolidated Appropriations Act. Just refer to the most recent version of the Act. That's the most recent version of the Act. Exactly. So you don't need any other acronyms or initialisms. The language that you're asking about, Your Honor, is in 29 U.S.C. Section 1185A, 8, paren, 8, end of paren, paren, capital A, end of paren. And it talks about the comparative analyses demonstrating that the processes, strategies, evidentiary standards, and other factors used to apply the non-quantitative treatment limits to mental health or substance use disorder benefits, as written and in operation, are comparable to and applied no more stringently than the processes, strategies, evidentiary standards, and other factors used to apply the non-quantitative treatment limitations to medical or surgical benefits in the benefits classification. Now, that's critical because the 24-7 on-site nursing is an evidentiary standard. Looking at the statute, tell us where you were again. 29 U.S.C. Section 1185A, paren, I think it's paren, 8, end of paren, paren, capital A, end of paren, paren, little i, little v, end of paren. So that's the most recent statement from Congress about what we should be looking at. And I know the district court was frustrated, but we simply think that the district court missed the idea that you can take into account disparate results. Now, the preamble to the 2013 regulations themselves acknowledge that disparate results alone do not constitute a violation of the Act, but that language suggests that disparate results in combination with other information can constitute a Mental Health Parity Act violation. And with that, I'll reserve 16 seconds. Certainly, counsel. Ms. Berman. Good morning, Your Honors. Amanda Berman for Appellees Blue Cross and Blue Shield of Illinois and the Mondelez Global Group Benefits Plan, and I'm joined at council table by Counsel for Mondelez, Mary Margaret Moore, as well as my colleague, Ms. Pauley. Your Honors, appellants are asking this court to go where no court has gone before and hold that a viable Parity Act claim lies where a plaintiff concedes that a requirement is equally applied and equally there on the face of the plan and applies to both mental health and medical-surgical benefits, but has a disparate impact on mental health claims. The court should not do that. Plaintiff's argument does not have a basis in the statutory language. It's directly contrary. You mentioned that no other circuit has done this. What about the Tenth Circuit, the EWT, as counsel mentioned? Thank you, Judge Pryor. I'm glad you brought me to that. So the standard that the Tenth Circuit laid out does not help them at all. The key of the four factors the Tenth Circuit articulates is disparate impact. But then the Tenth Circuit goes on to explain that if you're going to have an as-applied claim, plaintiff must plausibly allege that a defendant differentially applies a facially neutral plan term. Differentially applies, meaning the act of applying the plan term, not a different impact. So that standard doesn't help them. So the suggestion is here there has been no discrimination. That's correct, Your Honor. The plan term, they have conceded, they conceded this in the first substantive heading in their argument section of their brief, on the first page of their reply, that we have a term, the skilled nursing facility requirement, that is equivalent, that applies on the face of the plan, both to residential treatment centers as well as to skilled nursing facilities. Under the plan, a 24-hour nursing requirement applies to both, and that requirement is equally applied to both. They concede this. But the impact, they're not making a facial claim, and so the claim for relief is that the impact that this facially neutral standard has on residential treatment centers is that their Blue Cross, or the plan, I'm sorry, is now requiring something that they don't require of skilled training facilities, and that's going beyond the generally accepted standard of care. So, Your Honor, one correction to what you said. They concede that it is required for skilled nursing facilities. The plan gets there in a different way. It says you have to comply with it. No, no, no, not the onsite, not the 24 onsite. They're agreeing to that. It's a little more wiggle in the joints where they're trying to go. And what I'm hearing from counsel is that the impact is that you are now requiring residential treatment centers to do something beyond the general standard of care. Skilled nursing facilities are not required to go beyond the general standard of care. That's the claim. Thank you, Judge. And so why would that not be enough to get beyond the motion to dismiss? Thank you, Judge Pryor, because, for example, the court in L.R., the District of Utah, and several other courts have addressed that head on. They've said, if a plan imposes a 24-hour nursing requirement for both care in a residential treatment center and the analogous medical-surgical care, whether the requirement exceeds the generally accepted standards of care is irrelevant under the Parity Act. And we agree, and that's drawn directly. We have the text of the act, and, you know, I would point the court instead to 29 U.S.C. 1185 AA3A2. Substantially all? So substantially all, but applied to substantially all. So, again, we're talking about the act of application. But even what my friend was quoting on the other side, I noted it uses the word applied twice. So we're talking about the act of applying. And the regulations could not be clearer, Your Honor. Not once, but twice, the 2013 rule, which is what applies here because this is a claim that arose in 2019. So even if the 2024 rule was in effect, which it's being reconsidered, doesn't matter, this is a 2019 claim. But the regulations say twice. Disparate results alone do not mean that the treatment limitations in use do not comply with these requirements. It says that twice, and it has several different examples where it expressly disavows any problem arising from some requirement that's equally applied but has a disparate impact. For example, where a higher level of clinical experience is required, either because you're applying the same licensing requirement and it exceeds from one but not the other, or because generally accepted standards of care require it from one but not the other. As long as the requirement is the same, it doesn't matter if there's a disparate impact. The regulations could not be clearer. I also wanted to briefly point to the plaintiff's leading case in their opening brief, Ryan Assad of the Ninth Circuit. We think this is a textbook example of an as-applied parity act claim, and it shows how this is very different, what they're trying to do here. There the plaintiff's alleged that the insurer was applying an algorithm internally as part of its internal process to mental health claims and that that algorithm was... I'm sorry, is this the Ninth Circuit case that you're referencing? Ryan Assad, Your Honor, and that the algorithm was restricting coverage for mental health claims, that it was not restricting for medical surgical claims. We don't have any such allegation of an internal process like that here. We have instead concessions that we have an equally applicable plan term that is being applied equally. Your Honor, we talked briefly about the generally accepted standards of care already. We have case laws saying the same things about licensing requirements. For example, I would point the court L.R. as well, but also the LP decision out of the District of Minnesota says nothing in the parity act forbids a plan from placing higher standards than those required by state licensing laws so long as the standard is consistently applied. Again, the emphasis in the case law, in the regulations, in the act itself is on application, the act of applying. So, you know, in their reply brief, the appellants seem to suggest, well, a parity act claim could never lie here, and that's not true. As the court explained in L.R., for example, it could lie if the plaintiff was alleging that the requirement was only enforced in regard to mental health claims and not enforced in regard to medical surgical benefits claims, or if it was being enforced in some different way with more proof requirements for one than the other. We don't have any allegations like that here. Counsel, what if Blue Cross, in the development, not the application, but in the development of the treatment limitation, knows that most residential treatment centers don't have 24-hour nursing but imposes that restrictive, that treatment limitation anyway, applies it with the knowledge that that is the effect? Do you think a parity act claim lies with that set of facts? Your Honor, respectfully, I don't. First off, we don't have any allegations like that here, and Blue Cross knows that. But how is the plaintiff going to know those allegations when pleading a claim? Sure, Your Honor, but that's why that claim would fail on its face, because the parity act, it has a limited scope and purpose. It's trying to require parity. Does the same requirement apply? And even that analysis, as this court stressed in the Midland-Hudson case. What about the statutory compliance program document, which requires some oversight over the development of treatment limitations? Sure, Your Honor. Because Blue Cross then could, in the privacy of their offices, follow a rule, enact a treatment limitation that they know is going to, because they know it's going to have a disparate impact. Is it your contention that Congress did not intend to limit that kind of discrimination? Your Honor, I think your question is answered by example two from the 2013 rule. And the answer is no, a claim wouldn't lie there. Example two sets forth an example where we have a plan applying a concurrent review requirement. Anywhere there's high levels of variation in the length of stay of the patient. But it says, in practice, the application of this standard affects 60% of mental health conditions and substance use disorders, but only 30% of medical surgical conditions. And the conclusion is, in this example two, the plan complies with the rules because the evidentiary standard used by the plan is applied no more stringently for mental health and substance use disorders. And then it goes on to say that that's true, even though it results in an overall difference in the application. So, again, the regulations could not be clearer. You know, the courts have expressed concern about how the Parity Act applies, but they've also recognized that that's ultimately a question for Congress and the regulators. And, Your Honor, I want to briefly address maybe the policy concern that might be motivating your question there is that, you know, what might an insurer do in the back room? I think the plaintiff's disparate impact theory is really problematic because if it were accepted, facilities could essentially create Parity Act claims by deciding for economic or other reasons that they're not going to provide certain types of care or they're not going to have, for example, education or experience requirements for their staff. So, for example, a facility's own choice that we're not going to have psychiatric exams when a patient comes in the door could then result in a Parity Act claim lying because by requiring that, the plans are lessening coverage. Fewer claims are getting covered. So I think there's a good reason to have this focus on what is the requirement and is it equally applied. And also the L.R. Court discusses at length that there's good reasons for this particular rule, the 24-hour on-site nursing, when we're talking about very ill children. Yeah, I think we have your position, Counsel. Thank you, Your Honor. Mr. King, I'll round you up to a minute for rebuttal. Thank you so much, Your Honor. Two things. Judge Maldonado, your hypothetical is in fact what we alleged. If you look at paragraph 63 of the amended complaint, you will see we specifically say the impact, the effect of this 24-7 on-site nursing requirement is dramatic in the sense that very few residential treatment centers have that and, comparatively speaking, skilled nursing facilities do it routinely. Also, although my friend on the other side of the case indicated that I'm asking you to go where no court has gone before, that's not accurate. We cite the SB v. Blue Cross and Blue Shield of Texas case, published 719F sub 3rd, page 112-1212, from the District of Utah in 2024, that says exactly this, that if there are disparate impacts associated with a treatment limitation, they may constitute a violation of the Mental Health Parity Statute. So we've got that, unless you have other... We also have the Ryan S v. UnitedHealth Group case.  Thank you. The case is taken under advisement.